LABORERS' PENSION FUND and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, Plaintiffs–Appellees,

v.

CONCRETE STRUCTURES OF THE MIDWEST, INC., an Illinois Corporation, Defendant–Appellant.

No. 92–3794.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1993.

Decided Aug. 5, 1993.

Hugh B. Arnold, Steven F. McDowell (argued), Donald D. Schwartz, Arnold & Kadjan, Chicago, IL, for plaintiffs-appellees.

Burr E. Anderson (argued), Susan R. Franklin, Kathleen M. Sullivan, Anderson & Franklin, Chicago, IL, for defendant-appellant.

Before CUMMINGS and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Concrete Structures of the Midwest, Inc. ("CSM") has signed successive collective bargaining agreements with the Laborers' District Council of Chicago, a union, since 1987. At issue today is whether CSM agreed to guarantee the debts of its subcontractors who owed the union for work covered by CSM's collective bargaining agreement with the union. Two of the union's benefit funds, the Laborers' Pension Fund and Laborers' Welfare Fund,[1] filed this suit under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1132 and 1145) ("ERISA") and Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)). The Funds sought to compel CSM, a general contractor, to pay the fringe benefit contributions of its bankrupt subcontractor, Guerra Construction Co. In response, CSM asserted that it was not responsible for Guerra's delinquencies under its agreement with the union. The district court found in favor of the Funds on summary judgment, and we affirm.

CSM's collective bargaining agreement with the union was a standard form contract that required CSM to pay fringe benefit contributions to the Funds. The agreement also included language describing CSM's obligations for any union work that CSM assigned to a subcontractor:

---

1. The full 21–word name of this fund—which repeats five words twice or more—appears in the caption of this opinion.

Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

In 1990 CSM employed Guerra as a subcontractor on two of CSM's construction projects, and that same year Guerra failed to pay its required contributions to the Funds. In November 1990, the Funds' counsel secured an installment note guaranteed by Guerra's owners to cover the delinquencies. Guerra paid installments in 1991 sufficient to cover its contributions due from March through October of 1990. In November 1991, however, Guerra went bankrupt and stopped paying. It appears that normally the Funds do not know the identities of general contractors responsible for the many subcontractors who employ Laborers; the Funds merely collect all the employers' contributions. Thus the Funds did not attempt to discover who was responsible for Guerra until Guerra defaulted for the second time (on its installment note, rather than on the original contributions). Conversely, CSM did not know that Guerra had failed to make its contributions until the Funds sued CSM in December 1991.[2]

Both parties made summary judgment motions in the district court. CSM argued that under Illinois surety law, any promise to pay its subcontractor's debts to the union was not supported by consideration, and that the Funds' extension of a payment schedule for Guerra to repay the delinquent pension contributions discharged CSM from any obligation to pay them. The Funds argued that ERISA and the plain terms of the collective bargaining agreement bound CSM to ensure payment of delinquent pension contributions

from its subcontractor Guerra.[3] The district court rejected CSM's arguments and awarded the Funds $6,849 in unpaid contributions, $684.90 in liquidated damages, $308.10 in costs and $8,175 in attorneys' fees. Thereafter CSM filed its notice of appeal.

■ The Funds are third-party beneficiaries of CSM's collective bargaining agreement with the union, and that agreement also makes CSM the surety of its subcontractors. CSM agreed to "assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits." The meaning of this clause is so clear that we may interpret it as a matter of law. *Ooley v. Schwitzer Division, Household Manufacturing, Inc.*, 961 F.2d 1293, 1298 (7th Cir.1992). Guerra was CSM's subcontractor; fringe benefits are "other benefits" under the agreement; Guerra failed to pay fringe benefit contributions to the Funds; ergo CSM is liable for Guerra's failure to pay. CSM promised to act as surety for Guerra's fringe benefit contributions at issue in this case.

■ The Funds' right to collect contributions under § 515 of ERISA is like the right of a holder in due course of commercial paper, in that the Funds are "entitled to enforce the writing without regard to understandings or defenses applicable to the original parties." *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1149 (7th Cir.1989) (*en banc*); *Robbins v. Lynch*, 836 F.2d 330, 333 (7th Cir.1988). This means that when a third-party beneficiary fund sues an employer to collect, the employer cannot defend by answering "I never meant to promise my workers I would pay you in these circumstances." Since CSM agreed to assume Guerra's benefit obligations and it has not offered any of the limited defenses to

**2.** In addition to CSM, the Funds' second amended complaint named defendant general contractors Palumbo Bros., Inc., Pepper Construction Co., James McHugh Construction Co., and Cameron Contractors, Inc. (R. Item 49). The Palumbo, Cameron and Pepper companies were dismissed for various reasons immaterial here (R. Items 72, 90 and 101). The record before us does not indicate any disposition of defendant McHugh Company, but in any event it is not involved in this appeal.

**3.** The parties also filed cross-motions for summary judgment under the Davis–Bacon Act, 40 U.S.C. § 276a, but the denial of these motions is not raised in this appeal.

payment left open by *Gerber Truck,* its appeal is all but over.

CSM argues that it should have been entitled to "immediate notice" of Guerra's delinquency, but there is no such requirement in ERISA or the collective bargaining agreement between CSM and the Laborers' Union. ERISA does not demand that funds notify a general contractor of a subcontractor's breaches. Moreover, the Funds here notified CSM of Guerra's default as soon as they discovered CSM's identity as one of Guerra's general contractors. The Funds made every effort to recover payments from Guerra before bringing suit against CSM. Even if CSM now deems these efforts unfair, CSM's contract with the union required it to pay Guerra's tardy employee fringe benefit contributions. *Gerber Truck,* 870 F.2d at 1155. If CSM desired further protections, it should have written them into the collective bargaining agreement.

■ CSM also argues that Illinois surety law bars the Funds from recovering Guerra's delinquent contributions from CSM, but ERISA's broad preemption clause does not allow state surety law to diminish the Funds' right to recover unpaid contributions under ERISA. 29 U.S.C. § 1144(a). Finally, in summary judgment proceedings below CSM failed to respond to the contribution figures submitted by the Funds. Under local Rule 12(n) and *Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir.1989), it is too late to contest those amounts in this appeal.

AFFIRMED.